Marta RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–01233–CR.

Court of Appeals of Texas,
Dallas.

Nov. 27, 1989.

Discretionary Review Refused
March 14, 1990.

Marcus J. Busch, Dallas, for appellant.

Anne Wetherhold, Asst. Dist. Atty., Dallas, for appellee.

Before ENOCH, C.J., and BAKER and OVARD, JJ.

## OPINION

BAKER, Justice.

Marta Rodriguez was convicted of unlawful possession of cocaine. In three points of error, she contends that the trial

court erred in denying her motion to suppress because the search warrant affidavit lacked probable cause, was based upon conclusory statements, and showed a reckless disregard for the truth. We disagree and affirm the trial court's judgment.

The search warrant in question was executed by Dallas police officers at apartment 128, Deer Creek Apartments, 3550 St. Francis Avenue, Dallas, Texas. During the search, the police seized ten kilograms of cocaine and approximately $26,000 in cash from the apartment and arrested appellant and three co-defendants. Two separate search warrants were issued; each by a different magistrate. Each of these warrants was issued based upon affidavits executed by Officer Bruce C. McDonald. Officer McDonald's first affidavit was executed early in the morning of April 6, 1988, for a warrant to search a light blue Chrysler station wagon. The warrant was issued by the magistrate at 2:28 a.m. on that date. A copy of the affidavit is included in this opinion as Appendix A. Subsequently, Officer McDonald executed a second affidavit for a warrant to search apartment 128 in the Deer Creek Apartments located at 3550 St. Francis, Dallas, Texas. This affidavit was executed late in the afternoon of April 6, and this warrant was issued by the other magistrate at 6:35 p.m. on that date. A copy of this second affidavit is included in this opinion as Appendix B.

In the first affidavit, Officer McDonald swore that he had received information from an informant that on April 5 a quantity of cocaine was being brought from Miami, Florida, to Dallas, Texas, in a light blue Chrysler station wagon with Florida plates numbered YBT–23F. The informant told Officer McDonald that the station wagon was driven by an unknown Cuban male and a person or persons whose names, ages, and descriptions were unknown. The informant said the station wagon would be found in the parking lot of the Deer Creek Apartments at 3550 St. Francis. After locating the station wagon, Officer McDonald had another officer bring a drug-sniffing dog to the scene. When shown the light blue Chrysler station wagon, the dog alerted positive. This positive alert signified that the car contained a controlled substance. Officer McDonald's affidavit also included information on the dog handler's background and training with drug-sniffing dogs, together with information on the background and training of the dog itself. Based upon this affidavit, the magistrate issued a warrant for a search of the Chrysler station wagon for the suspected drug.

In the second affidavit, Officer McDonald stated that he and other officers placed the Chrysler station wagon under continuous surveillance. However, they observed no activity around the station wagon for an extended period of time. Because there was no activity around the station wagon, Officer McDonald then contacted the Deer Creek Apartments' manager. Officer McDonald stated that the manager reported to him that the occupants of apartment 128 were a Latin male known as Humberto Lopez, approximately sixty years old, five feet eight inches tall and heavy set, a Latin female known as Angelina Lopez, approximately fifty-eight years old, and a Latin male known only as Herby. The second affidavit recites that the apartment manager told Officer McDonald that Humberto had a Florida driver's license and drove a Dodge Caravan with Florida plates. Officer McDonald's affidavit concludes that he believed, because of the information obtained, that the cocaine had been transferred from the station wagon and could be found in apartment 128 at the Deer Creek Apartments. As a result of this affidavit, the second magistrate issued the warrant to search that particular apartment.

At oral argument, appellant conceded that the police had probable cause to secure the search warrant on the light blue Chrysler station wagon. Appellant's real argument is that there is nothing to connect the facts in the station wagon affidavit with the facts in the apartment affidavit

so as to demonstrate probable cause to issue the warrant for apartment 128. In her first point of error, appellant argues that the apartment affidavit fails to recite any underlying circumstances or facts to test the requirement that probable cause must be shown before a search warrant may issue. She contends that the affidavit does not establish the inference and support the belief that the cocaine was in apartment 128. We disagree.

■ A "totality-of-the-circumstances" analysis is made to determine probable cause under the fourth amendment of the United States Constitution. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *Bower v. State*, 769 S.W.2d 887, 903 (Tex.Crim.App. 1989); *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988). In conducting this analysis, a reviewing court should not conduct a *de novo* review to determine the sufficiency of an affidavit for probable cause. *See Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. The magistrate's determination of probable cause should be paid great deference by reviewing courts. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331; *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). Reflecting this preference for the warrant process, the test for determination of probable cause is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrong-doing. The fourth amendment requires no more. *Bower*, 769 S.W.2d at 902, (citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).

■ Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex.Crim.App.1986). A search warrant affidavit must be read in a common-sense and realistic manner. Reasonable inferences may be drawn from the facts and circumstances contained within its four corners. *Lopez v. State*, 535 S.W.2d 643, 647 (Tex.Crim.App.1976). A magistrate, in assessing probable cause, may draw inferences from the facts. *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948). Probable cause can be found to exist when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution to believe that the items to be seized were in the stated place. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *Lopez*, 535 S.W.2d at 647. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the deference accorded search warrants. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

■ Even though Officer McDonald's affidavit does not contain direct evidence that the cocaine was in apartment 128, this does not mean that the affidavit lacked probable cause. The affidavit does state that the officers learned from their reliable informant that a Cuban male and female who lived in the Deer Creek Apartments were bringing in a large amount of cocaine from Miami, Florida, on April 5, 1988. The informant told the officers that the cocaine would be in a light blue Chrysler station wagon with Florida tags. The police located this station wagon at the parking lot of the stated address and located at the Deer Creek Apartments. After a positive alert by a drug-sniffing dog, they placed the station wagon under continuous surveillance. After no activity was seen for a period of time, Officer McDonald contacted the Deer Creek Apartments' manager and was informed that the lease on apartment 128 showed individuals from Florida living there. The manager told Officer Mc-

Donald the names, ages, and descriptions of the occupants of apartment 128. He also told Officer McDonald that one of the individuals listed a Florida driver's license and drove a 1988 Dodge Caravan with Florida license plates. The affidavit further stated that the description given to Officer McDonald by the apartment manager fit the description of the individuals given to McDonald's fellow officer by the informant. The affidavit concludes that the information received from the informant and additional information developed by the officer's own activities led the officer to believe that the cocaine had been transferred from the station wagon to apartment 128 in the Deer Creek Apartments.

In our view, it is reasonable to assume under the totality of the circumstances that since there was no activity around the station wagon, the cocaine had been transferred from the station wagon to the apartment. The situation here does not differ materially from other cases where searches have been upheld even though the connection between the items to be seized and the place to be searched rested not on direct observation, as in the normal search and seizure case, but on the type of crime, the nature of the missing item, the extent of the suspects' opportunity for concealment, and normal inferences as to where a criminal would likely hide contraband. *See, e.g., United States v. Rahn,* 511 F.2d 290 (10th Cir.1975); *United States v. Lucarz,* 430 F.2d 1051 (9th Cir.1970); *Elliott v. State,* 687 S.W.2d 359 (Tex.Crim.App.1985). When faced with a search warrant affidavit, a magistrate is not bound by such finely tuned standards as proof beyond a reasonable doubt or by a preponderance of the evidence; rather, his sole concern should be probability. *See Gates,* 462 U.S. at 235, 103 S.Ct. at 2330; *Winkles v. State,* 634 S.W.2d 289, 297 (Tex.Crim.App.1982) (opinion on reh'g). Appellant advances an additional argument that the affidavit is stale and lacks any indicia of probable cause because it does not state when the informant told the officers about the information regarding the drug trafficking.

This argument is without merit because the affidavit states that the informant told the officers on April 5, 1988, that a large amount of cocaine was being brought in from Miami, Florida. Under the totality of the circumstances, giving due weight to the preference accorded to the magistrate's finding, we hold probable cause existed and the warrant was valid. *See Ventresca,* 380 U.S. at 108, 85 S.Ct. at 745. We overrule appellant's first point of error.

■ In her second point of error, appellant contends that the affidavit does not support a probable cause finding because it is based upon conclusory statements which will not support the issuance of a search warrant. *See Morgan v. State,* 650 S.W.2d 920, 925 (Tex.App.—Tyler 1983, pet. ref'd). Appellant argues that the affidavit must set out the underlying circumstances upon which the conclusions were based. We reject this argument because, although a search warrant affidavit may not be based solely on conclusory statements, there is nothing improper with using conclusory statements if they are supported by additional corroborating details. *See Gates,* 462 U.S. at 241–43, 103 S.Ct. at 2333–35. Although the information received from the informant is stated in a conclusory manner by Officer McDonald in the apartment affidavit, that affidavit recites investigation and activities by the police officers which add additional details and corroboration of the facts received from the informant. Appellant's argument consists of a separate analysis of each statement contained in the apartment search affidavit. By analyzing the affidavit in this way, appellant improperly applies the "totality of the circumstances" standard. Although no single statement in and of itself would be sufficient, when all the statements, including the corroborating statements, are viewed in their totality, we conclude they support the magistrate's determination that there was a reasonable probability that the drugs would be found in apartment 128. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. We overrule appellant's second point of error.

In her third point of error, appellant argues that there are inconsistencies between the two affidavits which showed that Officer McDonald exhibited a reckless disregard for the truth. Appellant points out that the station wagon affidavit stated that Officer McDonald did not know the names and ages or descriptions of the persons who were in control of the station wagon, but the apartment affidavit provided specific descriptions of three different individuals. Appellant also draws attention to the fact that in the first affidavit Officer McDonald recited that he received the information about the cocaine being brought in from Miami from a confidential informant, whereas in the second affidavit he stated that he and his fellow officer had received the information from the same confidential informant. Appellant argues that such inconsistencies exhibit a reckless disregard for the truth and that, as such, were misleading to the magistrate, and the evidence should have been suppressed. *See United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984); *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). In our view, no real inconsistencies exist. The officer simply acquired additional information between the time of the first and second affidavits. Assuming the inconsistencies exist, we nevertheless conclude that they do not rise to the level of a reckless disregard for the truth. We conclude that appellant has failed to carry her burden of showing that Officer McDonald intentionally, knowingly, or with reckless disregard of the truth placed false assertions in the affidavit. *See Hennessy v. State*, 660 S.W.2d 87, 92 (Tex.Crim.App.1983). We overrule appellant's third point of error.

We affirm the trial court's judgment.

## Appendix A

| THE STATE OF TEXAS | A light blue Chyrsler Station Wagon |
| COUNTY OF DALLAS | with Florida State License Plate Number YBT-23F. |

The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:

1.  There is in Dallas County, Texas, a suspected place and premises described and located as follows: In the parking lot of the Deer Creek Apartments, 3550 St. Francis Avenue, Dallas, Dallas County, Texas, or the streets, highways, or alleys of Dallas, Dallas County, Texas, in a light blue Chyrsler Station Wagon with Florida State license plate number YBT-23F.

2.  There is at said suspected place and premises personal property concealed and kept in violation of the laws of Texas and described as follows: A controlled substance, to-wit: Cocaine.

3.  Said suspected place and premises are in charge of and controlled by each of the following persons: An unknown Cuban male and person or persons whose names, ages, and descriptions are unknown to the affiant.

4.  It is the belief of Affiant, and he hereby charges and accuses, that: The above described vehicle contained a controlled substance, to-wit: cocaine, on April 5th, 1988, in the City of Dallas, Dallas County, Texas.

5.  Affiant has probable cause for said belief by reason of the following facts: I, the affiant, B.C. McDonald #4050, am a Dallas Police Officer and am currently assigned to the Vice Control Division, Drug Abuse Section.

I, the affiant, have received information from an informant, on the 5th day of April, 1988, that there was a quantity of cocaine contained in the above described vehicle. With this information, on April 5th, 1988, at 11:05 p.m., I contacted Officer L. T. Smith #3093, a canine handler, who brought out his Police Canine #51, Josh. Officer Smith and Police Canine #51, Josh, then went to the apartment parking lot at 3550 St. Francis Avenue in the City of Dallas, Dallas County, Texas where Police Canine; #51, Josh, alerted positive to the above described vehicle that was parked in this lot. This positive alert signifies to the canine handler, L.T. Smith, that the vehicle containes a controlled substance, to-wit: suspected cocaine.

I, the affiant, on April 5th, 1988, talked to L.T. Smith #3093, who is a Dallas Police Officer assigned to the Canine Division of the Dallas Police Department. Officer Smith told me he has been a canine handler since May of 1982, and has five (5) years of experience with patrol canines as well as explosive detection canines, and one (1) year experience with a controlled substance canine. He has 300 hours of training with U.S. Customs and eighty hours of training from Rudy Drexler, a canine trainer for twenty seven (27) years. Officer Smith stated that his controlled substance canine is named Josh #51. He has 400 training hours with Canine #51, during which time, he was taught that the canine would bite, scratch, and become excited when he alerted positive to controlled substances. Officer Smith also has conducted approximately 2000 controlled substance searches with Canine #51.

Affiant believes that there is a controlled substance concealed in above listed vehicle because Officer Smith advised the affiant that Police Canine #51 gave a positive alert to the above listed vehicle.

Wherefore, Affiant asks for issuance of a warrant that will authorize him to search said suspected place and premises for said personal property and seize the same and to arrest each said described and accused person.

_____
AFFIANT

Subscribed and sworn to before me by said Affiant on this the _____ day of _____ . 19____ .

_____ '70
MAGISTRATE, DALLAS COUNTY, TEXAS

## Appendix B

COUNTY OF DALLAS

The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:

1. There is in Dallas County, Texas, a suspected place and premises described and located as follows: An apartment residence designated as apartment number 128, in the Deer Creek Apartments, located at 3550 St. Francis Avenue, in the City of Dallas, Dallas County, Texas. Also a 1988 Dodge Caravan, Florida license plate 797 ZHP.

2. There is at said suspected place and premises personal property concealed and kept in violation of the laws of Texas and described as follows: A controlled substance, to-wit:cocaine.

3. Said suspected place and premises are in charge of and controlled by each of the following persons: A latin male, known as Humberto Lopez, approximately 60 years old, 5'8" tall, heavy set, and a latin female, known as Angelina Lopez, approximately 58 years old, and a latin male, known only as Herby, and person or persons whose names, ages, and descriptions are unknown to the affiant.

4. It is the belief of Affiant, and he hereby charges and accuses, that: The latin males and female, described above, and person or persons whose names, ages, and descriptions are unknown to the affiant did on April 5th, 1988, in the City of Dallas, Dallas County, Texas, illegally possess a controlled substance, to-wit: Cocaine.

5. Affiant has probable cause for said belief by reason of the following facts: I, the affiant, B.C. McDonald #4050, am a Dallas Police Officer and am currently assigned to the Vice Control Division, Drug Abuse Section.

I, the affiant, received information from Durman Johnson #4505, who is also a Dallas Police Officer and Peace Officer in the State of Texas, on April 5th, 1988, concerning cocaine being brought in from Miami, Florida. Officer Johnson stated that his confidential reliable informant said that a Cuban male and female who lives at the above address were bringing in a large amount of cocaine from Miami, Florida on April 5th, 1988, in a light blue Station Wagon, with Florida tags. Officer Johnson and I located this vehicle at the above address and on April 5th, 1988, at approximately 11:05 p.m. had canine handler L.T. Smith #3093 check the vehicle with his controlled substance canine #51, Josh. Officer Smith said that Josh alerted positively to the vehicle. With this information, I obtained a search warrant for the above described Station Wagon, signed by Judge Middleton, on April 6th, 1988. Officers immediately began surveillance on the Station Wagon and have kept up the surveillance continually. No activity as been viewed by officers involving this vehicle. Registration was run on this station wagon and it showed to be a lease car out of Miami, Florida.

I, the affiant, contacted the Deer Creek Apartments Manager, who gave me the information concerning the above suspects and their Dodge Caravan, listed on their lease. The manager stated that the suspect Humberto listed a Florida Driver's License. These suspects also fit the information given to Officer Johnson from his informant.

I, the affiant, believe because of the information obtained that there is a quantity of cocaine in the apartment number 128, at 3550 St. Francis, in the City of Dallas, Dallas County, Texas, that has been transferred from the suspected Station Wagon. Affiant believes that the information given by Johnson's informant is reliable becuase previous information given by the informant has always proven to be true.

Wherefore, Affiant asks for issuance of a warrant that will authorize him to search said suspected place and premises for said personal property and seize the same and to arrest each said described and accused person.

_____
AFFIANT

Subscribed and sworn to before me by said Affiant on this the 6 day of _____, 19 88.

_____