IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-309-CR





GEORGE LOPEZ, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 0910788, HONORABLE LARRY FULLER, JUDGE PRESIDING



 




 In a trial before a jury, appellant was found guilty of the offense of possessing with
intent to deliver, a controlled substance, heroin, in the amount of 28 grams or more but less than
400 grams. See Texas Controlled Substances Act, 68th Leg., R.S., ch. 425, § 6, 1983 Tex. Gen.
Laws, 2361, 2373 (Tex. Rev. Civ. Stat. Ann. art. 4476-15, § 4.03, since repealed and codified
at Tex. Health & Safety Code Ann. § 481.112 (West 1992). Punishment was assessed at
confinement for fifteen years. In points of error one through four, appellant contends the trial
court erred in failing to suppress evidence seized under a search warrant that was not supported
by an adequate affidavit. In points of error five through seven, appellant asserts the trial court
erred by: not suppressing the testimony of Richard Robbins; failing to find that the State had not
presented sufficient admissible evidence that appellant had possession of the heroin; and failing
to grant appellant's motion to dismiss for failure to grant him a speedy trial. We will overrule
appellant's points of error and affirm the judgment of the trial court.

 Austin Police Sergeant Howard Williams testified that surveillance of appellant's
apartment began on August 16, 1990, in response to reports of suspicious behavior at his
apartment. While no illegal behavior was observed, Williams saw a large number of people going
to and coming from the apartment. On September 4, 1990, Williams received information that
appellant's father, George Lopez, Sr., a convicted heroin dealer, was in the apartment. Williams,
along with three fellow officers, went to appellant's apartment with four outstanding arrest
warrants for George, Sr., all of which were heroin related. In response to their knock, the door
to appellant's apartment was opened and one of the officers "identified us as police officers and
said we had an arrest warrant for George Lopez." The person who opened the door tried to slam
it shut. Williams stated, "[W]e forced our way in. We had to push our way past the two people
that were in the apartment. -- As we were going in, we could see the man later identified as
George Lopez, Sr., running toward the back -- there was a scuffle at the door, so it was hard to
get by." The toilet was flushing when George, Sr. was arrested at the door of the bathroom. 
After "securing" George, Sr. on the floor, Williams "immediately threw the door open to the
walk-in closet, which was right behind us, just to make sure that there was no one else hiding in
there to injure us." When Williams opened the door, he observed a set of scales of the type used
to measure grams. By the time Williams returned to the living room, his fellow officers had
subdued the two men who had wrestled with them. Williams opened closets in the living room
area to make sure that no one was hiding in them. When Williams opened one of the closets, a
hypodermic syringe was "in front of my face."

 After George, Sr. and the other occupants were taken to jail, Williams called the
narcotics division and dictated an affidavit to Officer Randy Bradley to be typed and presented to
a judge for a search warrant. In approximately fifteen minutes officers arrived with a search
warrant for the apartment. A search of the one-bedroom apartment resulted in the seizure of a
sandwich bag full of balloons that contained heroin, a hypodermic syringe containing heroin, and
a set of scales. The heroin seized in the search weighed a fraction over thirty-three grams.

 In his first point of error, appellant urges that the search warrant was not based on
an affidavit stating probable cause. The affidavit upon which the search warrant was based states
that the affiant received the following information from Sergeant Williams: (1) Williams had
received information from Richard Robbins, a security officer at the Montecito Apartments, on
August 15 that appellant was selling narcotics from his apartment; (2) Robbins told Williams he
had received numerous complaints from other apartment residents about large numbers of persons
going to appellant's apartment at "all hours of the day and night, staying for just a few minutes
and then leaving"; (3) on August 16, 1990, Sergeant Williams conducted a surveillance of
appellant's apartment and observed several people going in the apartment, staying for a short
period of time and leaving; (4) on September 4, 1990, Officer Chomount received information that
George, Sr. was staying in appellant's apartment; George, Sr. had an outstanding warrant for his
arrest for possession of cocaine; (5) Sergeant Williams and other officers went to the apartment,
were confronted by three men, one of the men, George, Sr., ran to the bathroom while the other
two men tried to push the officers out the front door; (6) officers found a small amount of cocaine
in the toilet in the bathroom; and (7) when the officers checked the closets for suspects, they
observed a hypodermic syringe and scales of the type used to measure narcotics. The affidavit
concludes that affiant's belief of the foregoing statement is based upon information provided by
Sergeant Williams, a credible person, who personally observed such offense.

 Appellant isolates each of the statements in the affidavit for analysis, contending
that the conclusory statement in each averment is unsupported by facts; he urges that the affiant's
statements about the residents and the security officer fail to state times or dates; and that
statements relative to violations of the law were shown by testimony at trial to be misleading or
false. Appellant's motions to suppress did not include allegations that the affidavit included any
false statements made knowingly, intentionally or with reckless disregard for the truth so as to
warrant a Franks hearing. See Franks v. Delaware, 438 U.S. 154, 156 (1978). Absent such a
showing, an appellate court will not look beyond the four corners of the affidavit. See Dancy v.
State, 728 S.W.2d 772, 781 (Tex. Crim. App. 1987), cert. denied, 484 U.S. 975 (1987).

 Our review of the magistrate's determination must "afford great deference to the
issuing magistrate's decision based upon the evidence as a whole." See State v. Morgan, 841
S.W.2d 494, 498 (Tex. App.--El Paso 1992, no pet.) The magistrate is not bound by such
standards as reasonable doubt or by preponderance of the evidence; "rather his sole concern
should be probability." Bower v. State, 769 S.W.2d 887, 902 (Tex. Crim. App. 1989), cert.
denied, 492 U.S. 927 (1989). While a search warrant may not be based on an affidavit's
conclusory statements alone, "there is nothing improper with using conclusory statements if they
are supported by additional corroborating details." See Rodriguez v. State, 781 S.W.2d 946, 949
(Tex. App.--Dallas 1989, pet. ref'd). The totality of the information set forth in the affidavit will
be looked to in determining whether the magistrate was provided with a substantial basis with
which to conclude that there was probable cause that the narcotics or evidence would be found at
the particular place sought to be searched. Illinois v. Gates, 462 U.S. 213, 238 (1983).

 Although the information from a named informant that appellant was selling
narcotics from his apartment was stated in a conclusory manner, the affidavit recites information
from investigations and observations both inside and outside the apartment that furnished
additional details and corroboration of the information furnished by the informant. We hold that
the totality of the information contained in the affidavit furnished the magistrate with a substantial
basis for finding probable cause to issue the search warrant. Appellant's first point of error is
overruled.

 In his second point of error, appellant contends the trial court erred when it did not
suppress evidence seized because the affidavit contains reckless and intentional falsehoods or
misrepresentations. A defendant may challenge a facially sufficient affidavit by showing that it
includes a false statement made knowingly, intentionally, or with reckless disregard for the truth. 
Franks, 438 U.S. at 158. In order to be entitled to an evidentiary hearing on allegations
concerning the veracity of the affidavit, Franks requires that the defendant specifically point out
the portion of the affidavit claimed to be false; allegations must be more than conclusory. Dancy,
728 S.W.2d at 781. Appellant's specific allegations must be accompanied with an offer of proof
stating the supporting reasons. Dancy, 728 S.W.2d at 781. At no time did appellant file any
motion asking that the seized evidence be suppressed because of false or misleading statements
in the affidavit. Nor does appellant direct us to any time during the pre-trial or the trial on the
merits that he asked the court to suppress the evidence because of false or misleading statements. 
Our review of the record reveals that appellant made an oral motion to suppress evidence at the
conclusion of the testimony at the trial on its merits that stated: "[A]ffiant led the justice of the
peace -- in the affidavit to believe that there was something improper or of probative nature when
he observed the apartment and the people going in and out that led you to suspect there were
drugs. But he testified -- that all it showed was that they were having a party." Appellant has not
met the burden required in Franks by establishing perjury or reckless disregard by a
preponderance of the evidence. See Franks, 438 U.S. at 156. Moreover, if appellant had
discharged this burden and the complained-of portion was set aside, the affidavit's remaining
contents were sufficient to establish probable cause. See Franks, 438 U.S. at 156. Appellant's
second point of error is overruled.

 In his third point of error, appellant asserts that the trial court erred in denying his
motion to suppress because the affidavit was based on averments resulting from an unlawful
search under the Fourth Amendment to the United States Constitution. Specifically, appellant
urges that the discovery of the balance scales and the hypodermic syringe in appellant's closets
resulted from an illegal search. The resolution of this point of error turns on whether the officers,
while effecting the arrest of George, Sr., pursuant to an arrest warrant, could conduct a
warrantless "protective sweep" of the apartment. A "protective sweep" is defined as "a quick and
limited search of premises, incidental to an arrest and conducted to protect the safety of the
officers. It is narrowly confined to a cursory visual inspection of those places in which a person
might be hiding." Maryland v. Buie, 494 U.S. 325 (1990). The Buie court stated, "The Fourth
Amendment permits a properly limited protective sweep in conjunction with an in-home arrest
when the searching officer possesses a reasonable belief based on specific and articulable facts that
the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at
337. The following language in Buie relative to the rationale underlying a "protective sweep" in
a home is instructive. The Buie court stated:



In the instant case, there is an . . . interest of the officers in taking steps to assure
themselves that the house in which a suspect is being, or has just been, arrested is
not harboring other persons who are dangerous and who could unexpectedly launch
an attack. The risk of danger in the context of an arrest in the home is as great as,
if not greater than, it is in an on-the-street or roadside investigatory encounter. .
. . A protective sweep . . . occurs as an adjunct to the serious step of taking a
person into custody for the purpose of prosecuting him for a crime. Moreover,
unlike an encounter on the street or along a highway, an in home arrest puts the
officer at the disadvantage of being on his adversary's "turf." An ambush in a
confined setting of unknown configuration is more to be feared than it is in open,
more familiar surroundings.



Id. at 333.

 In the instant cause, the officers were met with resistance at the front door by two
persons in the apartment. In an apparent effort to prevent the officers from entering the one
bedroom apartment, two of the occupants engaged the officers in a "scuffle" while George, Sr.
ran toward the back of the apartment. The Buie court specifically noted that closets "immediately
adjoining the place of arrest from which an attack could be immediately launched" could be the
subject of a "protective sweep."

 The walk-in closet where the scales were observed was "right behind" the place
where George, Sr., was arrested. Two closets in the living room were checked to "make sure
there was nobody hiding in those closets" after the two persons had been subdued in that room. 
Appellant urges that the fact that the balance scales and syringe were small indicated that the
officers were conducting a search for evidence rather than conducting a "protective sweep." 
Williams stated the syringe was "in front of my face" when I opened the closet door and the
scales, located on a shelf, caught his attention when he opened the walk-in closet door. In the
context of the instant cause, we hold that the officers possessed a reasonable belief based on
specific and articulable facts that an individual possessing a danger on the arrest scene was such
as to justify the opening of the closets. Appellant has not directed us to any evidence that shows
the observation of the scales and syringe resulted from anything more than a cursory visual
inspection of the closets. Appellant's third point of error is overruled.

 In his fourth point of error, appellant asserts that the trial court erred in failing to
suppress evidence of the scales and syringe under Article I, Section 9 of the Texas Constitution. 
Appellant has not provided us with argument or authority of why the Texas Constitution imposes
greater restrictions on police conduct than does the Fourth Amendment. Absent substantive
analysis or argument to support this contention, we will not review appellant's asserted rights. 
See Heitman v. State, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1990). Appellant's fourth
point of error is overruled.

 In his fifth point of error, appellant asserts that the trial court erred in refusing to
suppress the testimony of Richard Robbins. Appellant alleges, in a conclusory manner, that
Richard Robbins' testimony was not proper and had nothing to do with the conviction of George
Lopez, Sr., for possession of heroin seized in the apartment the day of the execution of the
warrant. Appellant does not identify the alleged inadmissible evidence nor does he refer to the
page in the record where same may be found. No analysis is made of evidence and authorities;
appellant merely asserts that the evidence "is not relevant and its prejudicial nature far outweighs
its probative nature." Nothing is preserved for review. See Tex. R. App. P. 74(f); Foster v.
State, 779 S.W.2d 845, 864 (Tex. Crim. App. 1989), cert. denied, 494 U.S. 1039 (1990). 
Appellant's fifth point of error is overruled.

 In his sixth point of error, appellant asserts that the trial court erred in finding the
evidence sufficient to support the conviction because the State failed to present any admissible
evidence that appellant had care, custody or control of the heroin. At the outset, appellant
complains of the admission of papers seized during the search of the apartment that were not listed
in the search warrant. A discharge from Brackenridge Hospital and a receipt from Radio Shack,
both items bearing appellant's name, were admitted over appellant's objection. Also, a list of
names with amounts ranging from fifty dollars to over six hundred dollars opposite the names was
seized during the search and admitted in evidence. At the top of this list appears the letters
"I.O.U." Williams testified that, based on his experience as a narcotic officer, the list was a "tally
sheet of money owed on narcotic transactions." In Ellerbee v. State, 631 S.W.2d 480 (Tex. Crim.
App. 1981), a Social Security letter addressed to the defendant, an item not listed in the search
warrant, was seized by officers while looking for drugs. The Ellerbee court held its seizure was
proper to show possession of the premises by the defendant. Id. at 483. The papers bearing
appellant's name showed possession of the premises. Williams, an officer experienced in
narcotics investigations, was qualified to express an opinion as to the significance of the I.O.U.
list. See Holladay v. State, 805 S.W.2d 464, 472 (Tex. Crim. App. 1991). The items were
relevant to show possession and intent to deliver and their seizure was proper.

 Assuming that none of the above items were admissible, there was sufficient
evidence to support the conviction. "Possession means actual care, custody, control or
management." Tex. Health & Safety Code Ann. § 481.002(38) (West 1992). Elizabeth Elford,
manager of the Montecito Apartments at the time in question, identified appellant as the lessee of
the apartment. Heroin and drug paraphernalia were found in a number of places in the one-bedroom apartment. The cabinet where the balloons containing heroin were found was unlocked
with a key taken from appellant's automobile key ring. Viewing the evidence in the light most
favorable to the verdict, we hold that any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Appellant's sixth point of error is overruled.

 In his seventh point of error, appellant contends that the trial court erred in denying
his motion for a speedy trial. Appellant alleges that the State secured a second indictment to put
pressure on appellant when he did not enter a plea to the first indictment; that he was called to
court two to three times a month, causing appellant distress and difficulty in his jobs, and caused
defense counsel "much hardship being forced to be ready for trial at least twice a month when the
State had no intention of going to trial."

 In determining whether a defendant has been deprived of his right to a speedy trial,
a balancing test utilizing the following factors has been fashioned by the United States Supreme
Court: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right;
and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972).

 Although appellant filed a motion to dismiss for failure to grant him a speedy trial,
there is no showing in the record that it was ever brought to the attention of the court, no evidence
was ever adduced in support of the motion, and no ruling was ever secured by appellant on his
motion. Appellant's conclusory allegations about the reasons for delay and resulting prejudice
and hardship suffered by appellant and his counsel are unsupported by the evidence. Appellant
has cited no authority to support his claim. Appellant's seventh point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Aboussie, Jones and Davis*

Affirmed

Filed: August 31, 1994

Do Not Publish














* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).