Opinion issued July 28, 2005
























In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01183-CR




THE STATE OF TEXAS, Appellant

V.

CHRISTIAN KENDALL SPARKS, Appellee




On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 986977




MEMORANDUM OPINION

          Appellee, Christian Kendall Sparks, was charged by indictment with
possession of a controlled substance, namely heroin, weighing less than one gram. 
See Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003). Appellee moved
to suppress the heroin and, after a pretrial hearing, the trial court granted the motion. 
The State appeals the trial court’s order.


 
          In its sole issue, the State contends that the trial court erred in granting
appellee’s motion to suppress the evidence because, the State argues, the search
warrant affidavit sufficiently set forth facts to establish probable cause for the issuing
magistrate to have concluded that heroin was located at the apartment identified in
the warrant. Conversely, appellee argues that the affidavit failed to provide an
adequate nexus between the heroin alluded to in the affidavit and any heroin likely
to be found inside the premises named in the warrant.


 
          We reverse and remand for further proceedings.
BACKGROUND
          On May 5, 2004, Houston Police Officer Frank Scoggins received information
from a confidential informant concerning heroin located in an apartment and
conducted surveillance. The next morning, Scoggins submitted an affidavit to a
magistrate requesting a search and arrest warrant. The affidavit read, in part, as
follows:
There is in the incorporated City limit of Houston, Harris County, Texas, a
suspected place and premise described and located as follows: a private
residence apartment where the address is 3030 Elmside Rd. #201. The location
can be found [described] . . . . 
There is at said suspected place and premise property concealed and kept in
violation of the laws of the State of Texas and described as follows: A
controlled substance, namely HEROIN.
Said suspected place and premise are in charge of and controlled by each of the
following person or persons: a white male known as Matt, being in his early
20's, being 6'2" to 6'3" tall, weighing 160 to 170 pounds with close cut brown
hair, brown eyes and tattoos on both arms; and a white female known as Penny
Charline Scott, having a birth date of 6-6-81 and being 5'05" tall weighing 140
pounds with blonde hair and blue eyes.
It is the belief of the affiant, and the affiant hereby charges and accuses that the
black [sic] male known as Matt and the white female known as Penny Charline
Scott, . . . are in possession of the above listed controlled substance (HEROIN),
having the intent to deliver said controlled substance to person or persons
unknown.
          My belief of the aforesaid statement is based on the following facts:
Your affiant is a Houston Police Department Narcotics Officer. Affiant
receives the assistance Of [sic] confidential informants while conducting
criminal investigations regarding persons who sell narcotics in the Houston,
Harris County, area.
A Confidential Informant contacted Affiant on May 5, 2004. The Informant
told affiant that Informant knows a place where quantities of HEROIN are
being concealed. The Informant advised affiant that the location is apartment
# 201 in the Stone Crossing apartments at 3030 Elmside Dr. #210 [sic]. . . .
The Informant advised Affiant that Informant had been outside the apartment
within the previous twenty-four hour period. Informant stated to Affiant that
he met with a white male known to the Informant as Matt. The Informant
described the white male to the affiant as being in his early 20's, 6'2" to 6'3"
TALL [sic], 160 to 170 pounds, with close cut brown hair, brown eyes and
tattoos on both arms. The informant further described Matt as being of slim
build. The Informant told Affiant that Matt lives in the apartment with a girl
friend who’s [sic] name is unknown to Informant. . . . 
Informant stated to Affiant that Matt sells heroin and other illegal narcotics to
persons unknown. Informant stated to Affiant that Matt meets persons outside
his apartment when called on cell phone number. . . . 
The Informant advised Affiant that Informant observed Matt come from
apartment #201. Informant stated to Affiant that Informant met with Matt
outside the described apartment, Informant stated to Affiant that Informant
observed Matt in possession of several pieces of a black tar like substance
wrapped in plastic. The Informant inspected the pieces of black tar like
substance wrapped in plastic and recognized the black tar like substance to be
HEROIN. The Informant stated to Affiant that Matt made it known to
Informant that the HEROIN was present for the purpose of sale. Informant
stated that Matt then entered apartment #201 with the heroin and remained
there after Informant left.
Informant stated to affiant that Matt made it known to Informant that if he did
not return to the apartment in a short period of time his girl friend would flush
the remainder of the narcotics in the apartment down the toilet.
The Informant has provided Affiant with information regarding illegal
narcotics activity on a number of occasions in the past. The informant has
proved to be accurate in each instance. Your Affiant knows the Informant to
be credible and reliable.
The Informant has told Affiant the Informant is familiar with HEROIN and can
readily identify the substance by sight and odor. The Informant advised the
Affiant that the black tar like substance observed in the possession of Matt and
placed in the apartment located at 3030 Elmside Dr. #201, is indeed HEROIN.
. . . .
Affiant checked Penny Scott on the Houston Police Department Computer and
learned the following. Penny Scott, . . . has a previous criminal history for
possession of a controlled substance under 28 grams.
Affiant and Officer Fred Wood conducted surveillance on the location for short
periods of time. Affiant has observed the white male described by informant
exiting and entering the apartment with frequency. During the surveillance
affiant has seen the described white female known as Penny Scott exiting and
entering the apartment with frequency.
Affiant reviewed the leasing documents of apartment #201 at 3030 Elmside
#210 [sic] and learned that Penny Scott 6-6-81 is listed as a resident in the
apartment.
Based on the information received from the reliable informant and follow up
investigation, and on observations while on surveillance, Affiant has reason to
believe, and does believe that the white male known as Matt and the white
female known as Penny Charline Scott possesses [sic] a quantity of HEROIN.
Affiant further believes that the white male known as Matt and the white
female named Penny Charline Scott are concealing the HEROIN inside the
described apartment, therefore committing a felony violation of the Texas
Controlled Substances Act.

          Later the same day, the magistrate signed a warrant authorizing a search of the
apartment for heroin and the arrest of Penny Scott and the person described as Matt. 
The warrant was executed the same day. The return states that officers seized 7.80
grams of tar heroin, in addition to “Xstacy,” methamphetamine, Xanax, cocaine,
marihuana, and Hydrocodone. Seven people were arrested, including appellee. 
          At the time in question, appellee was staying as an overnight guest in the
apartment. When officers entered the apartment to execute the warrant, they saw
appellee holding a tinfoil of heroin up to his mouth. Scoggins stated that, in his
training and experience, he believed appellee was smoking heroin. The tinfoil later
tested positive for heroin and appellee was charged with possession of less than one
gram. 
          Appellee filed a pretrial motion seeking to suppress the tinfoil of heroin seized
pursuant to the search warrant. Specifically, in his motion, appellee contended that
the search warrant was issued in violation of his constitutional and statutory rights



because the supporting affidavit failed to establish the credibility of the informant and
failed to set forth sufficient facts to establish probable cause that heroin was located
in the apartment. In addition, appellee contended that the information in the affidavit
was stale. The trial court granted appellee’s motion.
STANDARD OF REVIEW The Court of Criminal Appeals has held that the standard to be applied to the
review of a magistrate’s determination of probable cause in issuing a search warrant
is the deferential standard of review articulated in Gates and Johnson. Swearingen
v. State, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); see Illinois v. Gates, 462 U.S.
213, 236, 102 S. Ct. 2317, 2331 (1983) and Johnson v. State, 803 S.W.2d 272, 289
(Tex. Crim. App. 1990), overruled on other grounds by Heitman v. State, 815 S.W.2d
681, 685 n. 6 (Tex. Crim. App. 1991)); see also State v. Stone, 137 S.W.3d 167, 174
(Tex. App.—Houston [1st Dist.] 2004, pet. ref’d) (applying Gates standard). Under
Gates, we do not conduct a de novo determination of probable cause; rather, we
afford great deference to the magistrate’s determination of whether the affidavit
reflects a “substantial basis” for concluding that a search would uncover evidence of
a crime. Gates, 462 U.S. at 236, 103 S. Ct. at 2331; Stone, 137 S.W.3d at 174. 
          We examine only those facts found within the four corners of the affidavit to
determine whether probable cause exists. Stone, 137 S.W.3d at 175 (citing Massey
v. State, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996)). Whether the facts stated in
the affidavit are adequate to establish probable cause depends on the “totality of the
circumstances.” Gates, 462 U.S. at 238, 103 S. Ct. at 2332; Johnson, 803 S.W.2d at
289; Stone, 137 S.W.3d at 175. In essence, we determine whether there is a fair
probability, not an actual showing, that contraband will be found in a particular place
in light of the totality of the circumstances, as set forth within the affidavit. Gates,
462 U.S. at 238, 103 S. Ct. 2332. The Gates court explained:
The task of the issuing magistrate is simply to make a practical,
commonsense decision whether, given all the circumstances set forth in
the affidavit before him, including the “veracity” and “basis of
knowledge” of persons supplying hearsay information, there is a fair
probability that contraband or evidence of a crime will be found in a
particular place. 

Id. 
          When, as here, the trial court did not make findings of fact and conclusions of
law in granting appellee’s motion to suppress, the State must address and prevail on
every theory that could have supported the trial court’s granting of the motion in
order to prevail on appeal. See Stone, 137 S.W.3d at 174.
 
ANALYSIS
          Probable cause to search the apartment
          In his motion to suppress the heroin evidence, appellee contended that there
was no probable cause for the issuance of the warrant to search the apartment because
there was no nexus shown between the heroin on Matt’s person and any heroin inside
the apartment.

          Information regarding the possession of drugs is insufficient on its own to
warrant the search of a home. See Cassias v. State, 719 S.W.2d 585, 590 (Tex. Crim.
App. 1986). Rather, there must be probable cause to believe that the object of the
search is probably on the premises. See id. at 587.

 

          Here, the affidavit reflects that a person described as “a white male . . . in his
early 20's, 6'2" to 6'3" TALL [sic], 160 to 170 pounds, with close cut brown hair,
brown eyes and tattoos on both arms,” known as Matt, meets people outside his
apartment when summoned by a certain cell phone number, and sells heroin and other
illegal narcotics. On May 4, 2004, the informant observed Matt come from apartment
#201 to meet with the informant. The informant observed Matt in possession of
several pieces of a black tar-like substance wrapped in plastic, which the informant
inspected and recognized as heroin. Matt told the informant that the heroin was for
sale. The informant stated that “Matt made it known . . . that if he did not return to the
apartment in a short period of time his girl friend would flush the remainder of the
narcotics in the apartment down the toilet.” The informant then watched Matt return
to and re-enter apartment #201 with the heroin on his person.

          Appellee argues that there is no evidence from which the magistrate could have
concluded that a nexus existed between the heroin on Matt’s person and any heroin
likely to be found in the apartment. As examples, he points out, inter alia, that the
informant did not state that he had ever been in the apartment nor indicated where the
drugs might be stored in the apartment. However, the observation of controlled
substances in the possession of an individual coming or going directly to or from a
residence, in conjunction with an informant’s tip, has been held sufficient to support
a warrant to search the residence. See Gates, 462 U.S. at 225–27, 235, 103 S. Ct. at
2325–26, 2330 (holding affidavit sufficient to show probable cause to search
residence, although individuals transporting drugs had not entered the residence, on
the basis that proof beyond reasonable doubt is not required; rather, probability is sole
concern). 

          In Ramos v. State, this Court examined an affidavit by a Houston police officer
stating that he had received information that a residence was being used to store “a
great amount” of marihuana and cocaine for sale. 31 S.W.3d 762, 764 (Tex.
App.—Houston [1st Dist.] 2000, no pet.). Police conducted surveillance at the house
for several hours, with some gaps in the surveillance, and established that the two
individuals described by the informant were at the residence, with the described
pickup truck parked in the driveway. Id. at 763. The next morning, officers saw one
of the individuals come out of the house and leave in the pickup truck, carrying a
trash bag in the bed. Id. at 764. Officers stopped the truck on unrelated warrants and
discovered 20 pounds of marihuana in the trash bag. Id. Officers did not know when
the bag of marihuana was put into the truck, but surmised that it must have happened
at the house that morning. Id. In addition, the informant had reported that “there were
numerous pounds of marihuana at the house.” Id. at 765. The police officer affiant
stated that, based on the information he received about the house and what was found
in the truck, he believed that there was a greater amount of marihuana being stored
at the residence. Id. This Court upheld the warrant to search the house on the ground
that the allegations in the affidavit justified a reasonable conclusion that there was
marihuana at the residence. Id. at 764 (holding affidavit sufficient to show probable
cause to search residence based on informant’s tip concerning marihuana being stored
at residence coupled with marihuana discovered in truck leaving directly from
residence); see also Rodriguez v. State, 781 S.W.2d 946, 948–49 (Tex. App.—Dallas
1990, pet. ref’d) (holding affidavit sufficient to show probable cause to issue warrant
to search apartment based on reasonable conclusion that cocaine known to be in car
had been taken into an apartment, even though no direct observation of such had
taken place).

          In addition, as discussed above, Scoggins personally verified the descriptions
of Matt and Penny by going to the apartment and observing them. Scoggins observed
Matt and Penny frequently coming and going from the apartment. Also, Scoggins
reviewed the apartment leasing documents and verified that Penny was in control of
the apartment. Further, Scoggins determined that, according to the Houston Police
Department computer, Penny had previous criminal history for possession of a
controlled substance. Matt’s statement concerning the presence of narcotics in the
apartment while he was showing heroin to the informant was reasonably corroborated
by Scoggins’s verification of all of the other facts given by the informant and
Scoggins’s determination that Penny has possessed controlled substances in the past. 

          Use of the term “narcotics”

          Appellee also asserts that the affidavit is critically flawed because, while
Scoggins repeatedly used the word “heroin” in his affidavit, he quotes Matt as having
commented that his girlfriend would flush the remainder of the “narcotics” down the
toilet. Hence, argues appellee, the magistrate could not have reasonably concluded
that heroin would be found in the apartment. 

          Courts have recognized that affidavits “are normally drafted by non-lawyers
in the midst and haste of a criminal investigation. Technical requirements of
elaborate specificity once exacted under common-law pleading have no proper place
in this area.” Gates, 462 U.S. at 235, 103 S. Ct. at 2330–31 (quoting United States
v. Ventresca, 380 U.S. 102, 108, 85 S. Ct. 741, 745 (1965)). As admitted by appellee,
the affidavit repeatedly refers to heroin. Moreover, the informant, an individual
familiar with the characteristics of heroin, reported that Matt presented him with
several pieces of heroin, indicated that the drug was for sale, and then re-entered the
apartment. Finally, it is within the realm of common knowledge that heroin is a
narcotic. See Random House Webster’s Unabridged Dictionary 896 (2d ed.
2001) (defining heroin as “a white, crystalline, narcotic powder”). In reviewing the
affidavit in its totality and applying a practical, non-technical approach, as we are
required to do, we refuse to conclude that the single use of the word “narcotics”
renders the magistrate’s issuance of the warrant to search the apartment for heroin
unreasonable.

          In sum, we conclude that, as in Ramos, based on the facts in the affidavit, it
was not unreasonable for the magistrate to determine that heroin could be found in
the apartment listed in the affidavit. The standard requires that the reviewing
magistrate make a common sense decision after taking into consideration all of the
circumstances set forth in the affidavit, including the basis of knowledge of persons
supplying hearsay information and any corroborative police work, to conclude that
there is a fair probability that evidence is located in a particular place. Gates, 462
U.S. at 238, 103 S. Ct. at 2332. In turn, the standard requires that the reviewing court
give great deference to the magistrate’s decision. Id. at 236, 103 S. Ct. 2331;
Douglas v. State, 794 S.W.2d 98, 101 (Tex. App.—Houston [1st Dist.] 1990, pet.
ref’d). 

          By considering the totality of the circumstances, looking only to the four
corners of the affidavit, and by deferring to the magistrate’s reasonable inferences
from the facts and a common sense interpretation of the affidavit, we conclude that
the magistrate had probable cause to believe that the heroin to be seized would be
located at the apartment listed in the affidavit. 

          We sustain appellant’s sole issue.

Conclusion

          We reverse the trial court’s order granting the motion to suppress and remand
for further proceedings.







                                                             Laura Carter Higley

                                                             Justice

 
Panel consists of Justices Taft, Alcala, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).