**The STATE of Texas, Appellant,**

v.

**Gary Wayne STONE, Appellee.**

**No. 01–02–01063–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 1, 2004.

■■■■■■■■■■■■■■■

———

David C. Newell, Assistant District Attorney, John F. Healey, Jr., District Attorney, Richmond, TX, for Appellant.

Charles Lee Michulka, Richmond, TX, Jack R. Stern, Del Rio, TX, for Appellee.

Panel consists of Justices TAFT, EVELYN V. KEYES, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

■ The State of Texas appeals the trial court's suppression of evidence collected from appellee Gary Wayne Stone's computer pursuant to a search warrant.[1] In two points of error, the State argues that (1) "the issuing magistrate reached the reasonable conclusion that a search would uncover evidence that appellee had distributed harmful sexual material to a minor from the computer in appellee's home" and (2) Texas Penal Code section 43.24 is constitutional as applied to Stone.[2] We reverse and remand.

## Background

Appellant was charged with attempted display of harmful material to a minor, as well as 43 counts of possession of child pornography after a search of his comput-er uncovered various images of child pornography.

The following facts are derived from Sergeant Leah Dalton's evidentiary search warrant affidavit and the trial court's hearing on appellant's motion to suppress.

On June 7, 2001, Dalton submitted an affidavit in support of a search warrant to District Court Judge Brady Elliot. Dalton averred that Gary Wayne Stone, a Rosenberg Police Department officer, committed the offense of sale, distribution, or display of harmful material to a minor in violation of Texas Penal Code section 43.24(b)(1). A person commits this offense if, knowing that the material is harmful and knowing the person is a minor, he sells, distributes, exhibits, or possesses harmful material for sale, distribution or exhibition to a minor. TEX. PEN.CODE ANN. § 43.24(b)(1) (Vernon 2003). Dalton wished to search Stone's residence and seize evidence tending to show that Stone committed this or a closely related criminal offense. In particular, Dalton wished to recover any and all computer systems; any computer hardware; "any correspondence and other contacts with children in personal journals, books, magazines, videotapes, still photographs, and reproductions of the above"; any obscene materials kept or prepared for commercial distribution or exhibition; and any implements or instruments used in the commission of a crime.

Dalton then stated the probable-cause facts. On June 1, 2002, Dalton received information from Sergeant Scott Hefner

---

1. The State appeals this case under article 44.01(a)(5) of the Texas Code of Criminal Procedure, which allows it to bring an interlocutory appeal from the granting of a motion to suppress.

2. In a supplemental brief to the court, Stone argues in a cross-point that the extraterritorial application of Texas Penal Code section 43.24 violates his rights under Article I, Section 8 of the Texas Constitution because no

one in Texas viewed the harmful material. Stone has not provided a separate notice of appeal. Nor has he set forth a jurisdictional statement or argued his right to cross-appeal under article 44.01 of the Texas Code of Criminal Procedure. Stone's cross-point is therefore dismissed for lack of jurisdiction. *See State v. Vogel,* 852 S.W.2d 567, 570 (Tex. App.-Dallas 1992, pet. ref'd).

that Hefner had received a packet from Wisconsin Department of Justice Special Agent Eric Szatkowski in reference to Gary Wayne Stone. The packet from Szatkowski contained a compilation of e-mail messages, photographs, and America Online (AOL) instant message conversations between Stone (alias BearCop 53) and another person who appeared to be a 13–year–old female named Erica (alias BuffyTheVSer), but who was actually Szatkowski posing as the teenage female.

On April 30, 2001, Szatkowski, acting as Erica, received an AOL Instant Message from Stone. During their online conversation, Stone inquired into Erica's age. Erica told Stone that she was 13 years old and going to be "14 in June." Also during this conversation, Stone revealed that he was a police officer whose name was Gary. During this and other conversations on May 2, May 12, May 16, May 26, and May 31, 2001, Stone engaged in explicit conversations with Erica, talking about performing oral sex on each other, masturbation, breast size, visiting each other, being together, and orgasms.

Stone sent Erica a sexually explicit picture of himself exposing his genitals. Stone also provided Erica his cell phone and pager number, which were confirmed as belonging to Stone. The AOL home-page for "BearCop 53," Stone's alias, contained a picture of Stone in his Rosenberg Police Department Uniform, sitting in his patrol vehicle. During one conversation, Stone sent Erica three pictures of himself. The first pictures showed Stone's head and shoulders; the second picture showed him lying on his back, naked, clutching his genitals; the third picture showed him naked, lying on his side exposing his buttocks. During another conversation, Stone told Erica that his last name was Stone.

On June 7, 2001, Dalton received notification from Szatkowski that Stone was currently online. Dalton went to Stone's house to verify that he was at home, and Stone came to the door. Dalton verified that Stone was the same person depicted in the photographs sent to Erica. Szatkowski verified that Stone had logged off of his computer when Dalton approached the house.

Based on the affiant's probable-cause facts in the affidavit, and the affiant's belief that Stone had committed the offense of display of harmful material to a child, Judge Brady Elliott issued a search warrant on June 7, 2001. The search warrant authorized the search of Stone's Rosenberg residence based on the belief that the offense of sale, distribution, or display of harmful material to a minor in violation of Penal Code section 43.24 had been committed. A search of Stone's residence resulted in the seizure of a computer that contained various images of child pornography.

On June 8, 2001, based on a similar affidavit, County Court at Law Judge Walter McMeans issued an arrest warrant for Stone. The arrest warrant notes that the affiant believed that Stone committed the offense of display of harmful material to a minor. Later, it confirms that the affiant requested the arrest warrant for prosecution of the offense of Attempted Display of Harmful Material to a Minor. All other aspects of the search warrant affidavit and arrest warrant affidavit are identical, including the probable cause section. Stone was charged with 43 counts of possession of child pornography and three counts of attempted display of harmful material to a minor.

Stone filed a motion to suppress any and all "tangible evidence seized." Stone claimed that the search warrant violated the Texas and United States Constitutions because it was improperly and illegally executed. In particular, Stone argued that

the affidavit in support of the warrant did not reflect sufficient probable cause because it lacked sufficient underlying circumstances to establish the credibility of the affiant and to permit the conclusion that the alleged contraband was at the location in which it was claimed to be. He further argued that section 43.24(b)(1) was unconstitutional as applied to him because it is not legally possible to commit the offense via the internet, because the transmission of an image over the internet does not satisfy the section's definition of "material." Finally, Stone claimed that section 43.24(b)(1) was facially unconstitutional; it is not sufficiently tailored to avoid violating the First Amendment because the recipient's age cannot be verified over the internet. After a hearing and the filing of briefs on the motion to suppress, the trial court granted Stone's motion. The State now appeals.

## Discussion

In reviewing the trial court's ruling on the motion to suppress, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000). We give almost total deference to the trial court's determination of historical facts that depend on credibility, while we conduct a de novo review of the trial court's application of the law to the facts. *Id.* Because the trial court did not make findings of fact or conclusions of law in granting Stone's motion to suppress, the State must address and prevail on every theory that could have supported the trial court's granting of the motion to suppress in order to prevail on appeal. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).

### Probable Cause

In its first point of error, the State argues that the trial court improperly granted Stone's motion to suppress evidence seized pursuant to a search warrant. The State contends that the search warrant affidavit was adequate to establish probable cause and that the magistrate properly performed his duty. In his motion to suppress, Stone argued first that the offense could not be committed in cyberspace because of the definition of harmful "material," and that, consequently, there was (1) no offense committed supporting the search warrant and (2) no basis to establish probable cause. Additionally, Stone claimed that the search warrant affidavit lacked underlying circumstances that would permit the conclusion that the alleged contraband was at the location where it was claimed to be; that the affidavit failed to state underlying circumstances sufficient to establish the credibility of the affiant; and that the information in the search warrant affidavit was stale. Finally, Stone argued that the magistrate failed to manifest the neutrality and detachment demanded of a judicial officer when presented with a warrant application.

### Standard of Review

We review de novo the trial court's application of the law of search and seizure and probable cause. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Wilson v. State*, 98 S.W.3d 265, 271 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). Appellate review of an affidavit in support of a search warrant, however, is not de novo; rather, great deference is given to the magistrate's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236–37, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *Uresti v. State*, 98 S.W.3d 321, 334 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The test for determination of probable cause is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrong-

doing. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331.

[REDACTED] Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State,* 719 S.W.2d 585, 587 (Tex.Crim.App.1986). To justify the issuance of a search warrant, the affidavit submitted in support must set forth facts sufficient to establish probable cause that (1) a specific offense has been committed; (2) specifically described property or items to be searched for and seized constitute evidence of the offense; and (3) the property or items constituting such evidence is located at the particular place to be searched. Tex.Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp.2004). Whether the facts mentioned in the affidavit are adequate to establish probable cause depends on the totality of the circumstances. *Ramos v. State,* 934 S.W.2d 358, 362–63 (Tex.Crim.App.1996). Statements made during a motion to suppress hearing do not factor into the probable cause determination; rather, we examine only the four corners of the affidavit to determine whether probable cause exists. *Massey v. State,* 933 S.W.2d 141, 148 (Tex.Crim.App. 1996); *Wilson,* 98 S.W.3d at 270–71. Reasonable inferences may be drawn from the affidavit, and the affidavit must be interpreted in a common sense and realistic manner. *Wilson,* 98 S.W.3d at 271.

[REDACTED] The task of a magistrate in issuing a search warrant is to make a practical, common-sense decision, given all the circumstances set forth in the warrant's supporting affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, regarding whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. The duty of a reviewing court is simply to determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the warrant when viewing the affidavit. *Id.*

*Application of Section 43.24(b)(1)—Display of Harmful Material*

[REDACTED] Before determining whether the search warrant affidavit contains sufficient facts for a magistrate to determine that probable cause for the search existed, we must first analyze Stone's contention that the statute cannot be violated in cyberspace. In his motion to suppress and again in his brief, Stone argues that Texas Penal Code section 43.24 cannot apply to cyberspace situations. In particular, Stone argues that only statutes which specifically prohibit the transmission of "visual material" prohibit the transmission of computer images; that the legislature's definition of "harmful material" in the "Display of Harmful Material to a Minor" statute, section 43.21 of the Texas Penal Code, does not include "visual material" as defined in other sections of Chapter 43 of the Penal Code, specifically section 43.26 "Possession or Promotion of Child Pornography"; and, because section 43.21 does not specifically prohibit the transmission of such visual material, it cannot be violated via the internet. Stone further argues that, because it is not possible to violate section 43.21(b)(1) over the internet, and because affiant's belief that the statute has been violated forms the basis of probable cause for the issuance of the search warrant, there is not sufficient probable cause for the issuance of the search warrant.

The State, on the other hand, contends that section 43.24 does apply to the inter-

net and that Stone unduly restricts the definition of "harmful material." Consequently, the State argues that the search warrant affidavit sufficiently established probable cause. We agree with the State.

Section 43.24 makes it an offense to sell, distribute, or display "harmful material" to a minor. "Harmful material" is defined by the statute as material whose dominant theme "appeals to the prurient interest of a minor in sex, nudity, or excretion"; is "patently offensive" to community standards of suitability for minors; and is "utterly without redeeming social value for minors." Tex. Pen.Code Ann. § 43.24(a)(2). "Material," in turn, is defined for purposes of section 43.24 as "anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device." Tex. Pen.Code Ann. § 43.21(a)(2). The Penal Code does not define "tangible." However, "tangible," in its general common sense meaning, means "capable of being touched or sensed." Black's Law Dictionary 1468 (7th ed.1999). Something viewed on the computer screen is something that can be sensed visually. Furthermore, the character of information is not transformed whether it is communicated by a fax machine, a telephone, or a computer. *See Sawyer v. Tex. Dep't of Criminal Justice,* 983 S.W.2d 310, 312 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Therefore, if a picture, such as those Stone sent exposing himself, is tangible (as it is), sending it over the computer does not alter its status, and it remains tangible even though it subsequently has been communicated from one person to another via a computer. Internet transfer is a medium that the statute contemplates, although it is not explicitly enumerated. Therefore, internet e-mails, pictures, or communications fall

within the Penal Code's definition of "material," as these communications are capable of being used or adapted to arouse interest through the medium of internet transmission. Thus, it is legally possible to violate Penal Code section 43.24 by displaying harmful materials in cyberspace. We hold that the pictures and communications Stone sent to Erica are "harmful materials" within the meaning of section 43.24.

### Search Warrant Affidavit

■ We next determine whether the search warrant affidavit was otherwise adequate to establish probable cause. Applying the appropriate standard, looking to the four corners of the affidavit, giving the magistrate's decision to issue the warrant great deference by deferring to the reasonable inferences from the facts set forth in the affidavit and a common sense and practical interpretation of the affidavit, and considering the totality of the circumstances, we hold that the magistrate had probable cause to believe that (1) the offense of displaying harmful material to a minor had been committed; (2) the items to be seized mentioned in the search warrant—namely, Stone's computer and items related to the computer, correspondence with children, obscene materials kept for exhibition, and related items—would constitute evidence of the offense; and (3) such items would be located at Stone's residence. *See* Tex.Code Crim. Proc. Ann. art. 18.01(c).

■ Based on the search warrant affidavit, it was reasonable for the magistrate to conclude that the offense of distribution of harmful materials to a minor occurred. The communications and exchanges between Stone and Erica set forth in the affidavit demonstrate that Stone distributed harmful materials to Erica, who had represented to him that she was a 13–

year–old minor. The fact that 13–year–old Erica did not exist, but was rather being portrayed by an adult male Department of Justice agent, was a factual condition unknown to Stone that merely made it factually impossible for him to complete the offense under the particular circumstances; it did not make the commission of the offense legally impossible, *i.e.*, impossible under all circumstances. *See Chen v. State*, 42 S.W.3d 926, 930 (Tex.Crim.App. 2001). Factual impossibility provides no defense to Stone's attempt to complete the offense. *Id.*

▮ Nor was it unreasonable for the magistrate to have inferred that these communications originated from Stone's home computer. Indeed, in his brief to the trial court on his motion to suppress, Stone admitted that it was reasonable for the magistrate to conclude that a computer was the instrumentality of the crime. It was also reasonable for the magistrate to infer that the commission of the offense occurred at Stone's residence. The statute, requiring that the affidavit set forth sufficient facts to establish probable cause to believe that the property or items constituting evidence to be searched for or seized is located at or on the person, place, or thing to be searched, merely requires that there be probable cause to believe that the items are located in the general location, *i.e.*, that the object of the search is *probably* on the premises. *Ramos v. State*, 934 S.W.2d at 363.

▮ Sexual activity is usually an intimate, private matter that often takes place in one's home. Courts have acknowledged that "it makes sense that a person would keep their [*sic*] records of this intimate activity in their [*sic*] home, a place not subject to the eyes of the public absent invitation." *State v. Duncan*, 72 S.W.3d 803, 807 (Tex.App.-Fort Worth 2002, pet. dism'd). Although there may be other

theories of where or how Stone committed the offense, the affidavit is not required to exclude every other reasonable hypothesis. *Geesa v. State*, 820 S.W.2d 154, 155 (Tex. Crim.App.1991).

In his motion to suppress, Stone relied heavily on the Amarillo Court of Appeals decision in *Taylor v. State*, 54 S.W.3d 21 (Tex.App.-Amarillo 2001, no pet.). The Amarillo Court of Appeals recently held that an affidavit did not establish probable cause for a warrant to search a defendant's home when it was based on internet transmission of child pornography by a screen name, because the affidavit did not sufficiently connect the defendant with that screen name. *Id.* at 24–26. In particular, the Amarillo Court of Appeals concluded that the information in the warrant only showed that someone using an alias had sent contraband over the internet, that the defendant had used the alias at one time, and that the State had the defendant's address. *Id.* at 27.

In this case, by contrast, the affidavit sufficiently connected Stone with his screen name. Stone used an alias related to his job, namely "BearCop53"; and the corresponding homepage for "BearCop53" contained a picture of Stone in his police uniform sitting in his patrol vehicle. Stone identified himself by name and sent a photograph of himself to Erica. He also provided Erica with his cell phone and pager numbers—information that was ultimately traced back to his home address. Finally, when Dalton received information that BearCop had logged off the internet, she went to Stone's residence and confirmed not only that he was home, but also that he was the same person depicted in the photographs.

▮ Stone also cited to several technical errors present in the affidavit as a basis for the trial court to conclude that

the search warrant affidavit lacked probable cause. First, he cited to improper labeling of the offense in the search warrant affidavit as a violation of section 43.24 of the Penal Code when he was charged only with an attempted violation of that statute. However, the fact that an affidavit lists one offense and the facts in the affidavit establish probable cause to prove a closely related or lesser offense does not invalidate the warrant. *See Borsari v. State*, 919 S.W.2d 913, 918 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd); *Hall v. State*, 753 S.W.2d 438, 441 (Tex.App.-Texarkana 1988), *rev'd on other grounds*, 795 S.W.2d 195 (Tex.Crim.App.1990). Stone also argued that there were insufficient underlying circumstances to establish the credibility of the affiant. However, credibility of the affiant is not a requirement of a probable cause search warrant affidavit when no confidential informants are used to establish probable cause.[3] *Barton v. State*, 962 S.W.2d 132, 138 (Tex. App.-Beaumont 1997, pet. ref'd).

▆▆▆ Additionally, Stone argued that the information in the search warrant affidavit was stale. It was not. Probable cause ceases to exist when it is no longer reasonable to presume that items once located in a specified place are still there. *Rowell v. State*, 14 S.W.3d 806, 809–10 (Tex.App.-Houston [1st Dist.] 2000), *aff'd*, 66 S.W.3d 279 (Tex.Crim.App.2001); *Hafford v. State*, 989 S.W.2d 439, 440 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd). The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the criminal activity involved, the time elapsing between the occurrence of the events

set out in the affidavit and the time the search warrant was issued. *Rowell*, 14 S.W.3d at 809. When the affidavit recites facts indicating activity of a protracted and continuous nature, the passage of time becomes less significant. *Id.*

Here, the affidavit demonstrates an ongoing, continuous course of conversation and exchanges throughout the entire month of May 2001. The search warrant affidavit was issued on June 7, 2001. Only one week had passed between the last communication and the issuance of the search warrant. Considering the fact that Stone and Erica had been communicating for over two months, thus indicating that their conversations would likely continue, the information in the affidavit was not stale. The affidavit sufficiently allowed the magistrate to conclude that a fair probability existed that the evidence sought would be found at Stone's home on his computer. *See Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

▆▆▆ Finally, Stone alleged that the magistrate acted without the necessary neutrality. He provided no evidence to support his claim, however; and, therefore, the trial court could not have granted Stone's motion to suppress on this ground. Stone cites to the magistrate's failure to look at the allegedly obscene materials, but it is not necessary that a magistrate personally view allegedly obscene material prior to issuing a warrant; rather, the magistrate can conclude there is probable cause based on an affidavit's description of the obscene materials. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 876, 106 S.Ct. 1610, 1616, 89 L.Ed.2d 871 (referring to

---

**3.** Credibility, reliability, and basis of knowledge no longer need to be established by separate and independent facts; rather they are part of the "totality of the circumstances" determination whether probable cause exists. *Johnson v. State*, 803 S.W.2d 272, 289 (Tex.

Crim.App.1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex.Crim. App.1991). The failure to allege prior reliability is generally not a fatal defect in an affidavit. *Doescher v. State*, 578 S.W.2d 385, 388 (Tex.Crim.App. [Panel Op.] 1978).

magistrate's viewing of content of film in making probable cause determination).

Overall, the affidavit provides sufficient facts to enable the magistrate to conclude that an offense had been committed; that items described in the search warrant affidavit, such as Stone's computer, constituted evidence of the offense; and that such items could be found at Stone's residence. Examining the totality of the circumstances and the facts alleged in the probable cause affidavit, we hold that the trial court erred in granting Stone's motion to suppress based on lack of probable cause. We sustain the State's first point of error.

***Constitutionality of Texas Penal Code Section 43.24***

In its second point of error, the State argues that the trial court erred in suppressing the evidence taken from Stone's computer on constitutional grounds. Specifically, the State argues that the trial court erred in granting Stone's motion to suppress on the implied ground that the application of section 43.24(b)(1) of the Texas Penal Code to cyberspace situations offends the United States and Texas Constitutions because it is overbroad.

■■■ All laws carry a presumption of validity, and the party challenging a statute has the burden of establishing its unconstitutionality. *Ex Parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978); *Haddad v. State,* 9 S.W.3d 454, 458 (Tex. App.-Houston [1st Dist.] 1999, no pet.). Thus, a defendant must show that the statute, in its operation, is unconstitutional as applied to him in his situation; it is not sufficient that it might be unconstitutional as applied to others. *Bynum v. State,* 767 S.W.2d 769, 774 (Tex.Crim.App.1989). A statute is considered impermissibly overbroad if, in addition to proscribing activities that may be constitutionally prohibited, it sweeps within its coverage speech or conduct protected by the First Amendment. *Id.* at 772.

A person commits an offense under Penal Code section 43.24(b)(1) if, "knowing that the material is harmful: (1) and knowing the person is a minor, he sells, distributes, exhibits, or possesses for sale, distribution or exhibition to a minor harmful material." TEX. PEN.CODE ANN. § 43.24(b)(1). A person commits the offense of criminal attempt if, "with specific intent to commit an offense he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended." TEX. PEN. CODE ANN. § 15.01(a). To establish the offense of attempt to violate section 43.24(b)(1), the State need only prove that the defendant had the specific intent to display harmful material to a minor and that he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. *See* TEX. PEN.CODE ANN. § 15.01(a).

■■■ Stone argues that "the statute, as written, prohibits all conversation regarding sex, nudity, or excretion in cyberspace between adults (even if not obscene) due to the fact that age verification is not presently possibly in cyberspace." In other words, he argues that the statute sweeps too broadly when it is applied to the transmission of harmful material by means of a computer because it permits someone to be charged with the crime of displaying harmful material to a minor (1) even though he has no way of verifying that the person to whom he displays the proscribed material actually is a minor and (2) even though the material may not be obscene as to the person to whom it is displayed, namely an adult.

As support for his argument, Stone relies on *Reno v. American Civil Liberties Union,* 521 U.S. 844, 117 S.Ct. 2329, 138

L.Ed.2d 874 (1997). *Reno* struck down as overbroad parts of the Communications Decency Act (CDA), 47 U.S.C. § 223 (1994 ed. Supp. II), a federal statute that sought to protect minors from harmful material on the internet. One of the challenged sections of the CDA, section 223(a)(1)(B), prohibited a person from knowingly transmitting "obscene or indecent" communications by means of a telecommunications device, "knowing that the recipient of the communication is under 18 years of age." 47 U.S.C. § 223(a)(1)(B). The Court held that this provision was overbroad *solely* insofar as it embraced "indecent" communications. 521 U.S. at 860, 117 S.Ct. at 2338–39. It expressly preserved the government's right to investigate and prosecute the knowing transmission of obscene communications by means of a telecommunications device to a recipient under 18 years of age. *Id.* at 864, 117 S.Ct. at 2340.

The Court also struck down section 223(d) of the CDA, which prohibited the knowing sending or display of "patently offensive" communications (A) "to a specific person or persons under 18 years of age" or (B) "in a manner available to a person under 18 years of age" because these "open-ended prohibitions" embraced anyone posting indecent messages or displaying them on his or her own computer in the presence of minors, thereby encompassing potentially large amounts of constitutionally protected material with serious educational or other value, as well as unprotected obscene material. *Id.* at 859–60, 864, 117 S.Ct. at 2338–39, 2341 (quoting 47 U.S.C. §§ (d)(1)(A),(B)).

In holding that sections 223(a) and (d) were unconstitutionally overbroad, the Court was particularly concerned that the CDA proscribed the communication of both "indecent" and "patently offensive" material without defining those terms and

that it ignored "the fact that most internet forums—including chat rooms, newsgroups, mail exploders, and the Web—are open to all comers," so that the defendant could not know who was receiving the message or to whom it was being made available. *See id.* at 880, 117 S.Ct. at 2349. At the same time, the Court acknowledged that "[t]he problem of age verification differs for different uses of the internet." *Id.* at 855, 117 S.Ct. at 2336.

Stone urges us to see in section 43.24(b)(1) of the Texas Penal Code, an unconstitutionally overbroad statute of the same type as section 223(d) of the CDA, which the Supreme Court held to be intrinsically overbroad both because it contained undefined terms and because it applied indiscriminately to all uses of the internet that might be "available" to minors, rather than a provision akin to section 223(a) of the CDA, which the Court held to be overbroad solely insofar as it reached "indecent" material. We decline to do so.

In *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), the Supreme Court held that a state may constitutionally enact a statute that prohibits a person from exhibiting to children material determined to be obscene as to them, although not to adults, so long as the statute contains a scienter requirement; that is, the sale, distribution or display of obscene material to a minor must be made "knowingly." *Id.* at 643–44, 88 S.Ct. at 1283; *see also Smith v. California,* 361 U.S. 147, 152–53, 80 S.Ct. 215, 218–19, 4 L.Ed.2d 205 (1959). Such a law is called a "variable obscenity statute." *State v. Thiel,* 183 Wis.2d 505, 515 N.W.2d 847, 854 (Wis.1994). Thus, in *Ginsberg,* the Supreme Court overruled a vagueness challenge to a New York statute which prohibited "knowingly" selling material harmful to a minor. *Ginsberg,* 390 U.S. at 643–45,

88 S.Ct. at 1283 (construing PENAL LAW N.Y.1965 § 484–h).[4]

The vagueness challenge to the constitutionality of the New York statute at issue in *Ginsberg* centered on the knowledge required for a successful prosecution. The statute allowed prosecution of a defendant who had "reason to know" both the content of the material and the age of the minor or "a belief or ground for belief" warranting further inspection or inquiry of both the content of the material and the age of the minor; and it provided for the acquittal of a defendant who proved that he "made 'a reasonable bona fide attempt to ascertain the true age of such minor.'" *Id.* at 645–46, 88 S.Ct. at 1283–84 (quoting PENAL LAW N.Y.1965 § 484 h(1)(g)(ii)). In upholding the statute, the Supreme Court declined either to further define the mental element required for a successful prosecution of the statute with respect to the character of the material sold or displayed or to delineate the efforts the defendant must make to determine the age of the recipient in order to be excused. *Id.; see also Smith*, 361 U.S. at 154, 80 S.Ct. at 219. Subsequently, in *U.S. v. X–Citement Video Inc.*, the Court reaffirmed the importance of scienter requirements in child pornography statutes as to both the nature of the material and the age of the victim. 513 U.S. 64, 78, 115 S.Ct. 464, 472, 130 L.Ed.2d 372 (1994) (reading 18 U.S.C. §§ 2252(a)(1), (2) as requiring scienter both as to content of material and age of victim). Again, the Court did not further define the mental element required for a successful prosecution.

Section 43.24 of the Texas Penal Code is a constitutionally permissible variable obscenity statute of the type approved in

*Ginsberg* and *Reno*. A person commits an offense under section 43.24(b)(1) if he sells, distributes, or displays harmful material, "knowing the material is harmful... and knowing the person is a minor." TEX. PEN.CODE ANN. § 43.24(b)(1). "Harmful material," is defined by section 43.24 as obscene material, namely that which appeals to the prurient interest of a minor, is patently offensive to prevailing standards as to suitable material for a minor, and is utterly without redeeming social value for minors. TEX. PEN.CODE ANN. § 43.24(a)(2). The constitutionality of statutes prohibiting the display of such material was upheld against a vagueness challenge in *Bryers v. State*, 480 S.W.2d 712, 715–17 (Tex.Crim. App.1972) (statute defining obscene material as that which, taken as whole appeals to prurient interest, is patently offensive, and is utterly without redeeming social value is not unconstitutionally vague); *see also Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Moreover, section 43.24 contains scienter requirements with respect to both the type of material displayed and the person to whom it is displayed. The question, therefore, becomes whether it is possible for a person who sends sexually explicit material by means of a computer to a specific recipient, as in Stone's case, to know both that the material is harmful to minors and that the recipient is a minor so that the statute can be enforced only against those persons with such knowledge and therefore does not sweep within its scope constitutionally protected adult communications.

■ Under Texas law, an accused's knowledge of the content and character of obscene material may be shown by either direct or circumstantial evidence. *Carroll*

4. In *Reno*, the Court reaffirmed but distinguished *Ginsberg*, primarily on the ground that the term "indecent," in section 223(a)(1) of the CDA was entirely undefined, whereas the New York statute restricted its definition of the term "harmful to minors" as "utterly without redeeming social importance for minors." 521 U.S. at 865, 117 S.Ct. at 2341.

*v. State*, 701 S.W.2d 913, 914 (Tex.Crim. App.1986); *Glass v. State*, 761 S.W.2d 806, 807 (Tex.App.-Houston [1st Dist.] 1988, no writ); *see also Allen v. State*, 478 S.W.2d 946, 947 (Tex.Crim.App.1972) (defendant's "lascivious intent" to knowingly and intentionally expose private parts to person under 16 inferred from defendant's conduct of twice exposing himself to 15–year–old and her friends, his motions and gestures, and surrounding circumstances). No particular kind of evidence is required. *Glass*, 761 S.W.2d at 807.

■ Likewise, knowledge that the victim of a sexual offense is a minor can be inferred from "the conduct of, by remarks of and circumstances surrounding the acts engaged in by an accused." *Turner v. State*, 600 S.W.2d 927, 929, 930–31 (Tex. Crim.App., [Panel Opinion], 1980) (construing Texas Penal Code section 21.11(a)(2), prohibiting indecent exposure involving a child; defendant's maneuvering car into vision of 12–year–old and exposing himself above console sufficient to infer knowledge and intent); *see also McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. [Panel Opinion] 1981) (construing same provision and Texas Penal Code section 21.11(a)(1), prohibiting sexual contact with a child).

Here, the photographs Stone transmitted constitute evidence that Stone knowingly transmitted harmful material to a specific recipient, "Erica," over his home computer. Because he transmitted the material after he had asked "Erica" her age and she had replied that she was 13 years old "going on 14," there is also evidence that he intended to transmit this material to a minor. Had Erica, in fact, been 13 years old, Stone's question and Erica's response would also have been evidence of Stone's knowledge that Erica was a minor. *See Allen*, 478 S.W.2d at 947; *Turner*, 600 S.W.2d at 929, 930–31. Thus, we find that it is not impossible for a person to know that the person to whom he has transmitted harmful material by computer in the type of circumstances presented by this case is a minor. Nor is it impossible for the State to prove scienter. Therefore, Stone has not shown that section 43.24 sweeps within its scope constitutionally protected communications. His challenge to section 43.24 as constitutionally overbroad fails.[5]

We find it significant that none of the state law "harmful to minors" statutes struck down by the federal courts as unconstitutional in the cases cited by Stone

5. Stone's attempt to distinguish a now-superseded Wisconsin statute prohibiting a person "with knowledge of the nature of the material" from exhibiting harmful material to a child also fails. *See* Wis. Stat. § 948.11(2) (1997–98). Stone argues that only the Wisconsin's statute's requirement of face-to-fact contact between the victim and the perpetrator "allows the state to impose on the defendant the risk that the victim is a minor." *State v. Trochinski*, 253 Wis.2d 38, 644 N.W.2d 891, 906 (2002). Unlike Texas Penal Code section 43.24, former section 948.11(2) of the Wisconsin statutes contained no express scienter requirement with respect to the age of the minor; it was therefore held to be facially constitutional only because it was applied in a face-to-face context. *Trochinski*, 644 N.W.2d at 904. By the time *Trochinski* was

decided, however, the Wisconsin Supreme Court had already held that same statute unconstitutional as applied in internet situations precisely because it did not have a requirement that the State prove scienter with respect to the age of the victim. *State v. Weidner*, 235 Wis.2d 306, 611 N.W.2d 684 (2000). The statute was therefore amended to add the requirement that the defendant either "knows or reasonably should know that the child has not attained the age of 18 years," *or* that he "has face-to-face contact with the child," thus making possible the prosecution of internet crimes. Wis. Stat. § 948.11(2) (2004) (amended effective Sept. 1, 2001) (prohibiting the "use of a computer to facilitate a child sex crime"). The Wisconsin statute now parallels the Texas statute at issue here.

contained a scienter provision respecting the age of the minor similar to that in section 43.24 of the Texas Penal Code.[6] We also find it significant that the California courts have upheld as constitutional a state statute criminalizing the distribution and exhibition of harmful material "by electronic mail, the Internet . . ., or a commercial online service" by a person "with knowledge that [the recipient] is a minor, or who fails to exercise reasonable care in ascertaining the true age of a minor." *Hatch v. Superior Court,* 80 Cal.App.4th 170, 207, 94 Cal.Rptr.2d 453, 480 (2000, rev.denied) (construing California Penal Code section 288.2(a, b)); *People v. Hsu,* 82 Cal.App.4th 976, 982, 99 Cal.Rptr.2d 184, 189 (2000, rev.denied).

▬▬ Finally, Stone's argument that section 43.24(b)(1) of the Penal Code is unconstitutional as applied to him because Erica was not, in fact, a 13–year–old girl but a 50–year–old man is unavailing. This argument fails to distinguish between legal and factual impossibility. "[F]actual impossibility exists when, due to a physical or factual condition unknown to the actor, the attempted crime could not be completed." *Chen,* 42 S.W.3d at 929. In other words, the actor's objective is forbidden by the criminal law, even though he is prevented from reaching that objective because of circumstances unknown to him. *Id.* If Erica had been younger than 18 years old and thus an actual minor as defined by the Distribution of Harmful Materials to a Minor statute, then what the State contends

Stone intended to accomplish (distribution of harmful material to a minor) *could have been* accomplished, constituting an offense under section 43.24.

Due to a factual condition unknown to Stone, namely that Erica was actually Szatkowski, a 50–year–old man, the offense of distribution of harmful material to a minor could not be completed. However, Stone was not charged with an actual violation of section 43.24(b)(1), but with an *attempted* violation of the statute, which made the offense factually impossible but not legally impossible. *See Chen,* 42 S.W.3d at 929 (discussing legal and factual impossibility, attempt, and age of alleged victim as applied to sexual performance by child statute); *Yalch v. State,* 743 S.W.2d 231, 233 (Tex.Crim.App.1988) (discussing required elements of criminal attempt). Because Stone is charged with attempted display of harmful material to a minor under section 15.01(a) of the Penal Code, and not with an actual violation of section 43.24(b)(1), it is immaterial that the crime of display of harmful material to a minor was factually impossible to complete. *Chen,* 42 S.W.3d at 930.

We hold that section 43.24 of the Texas Penal Code is not unconstitutionally overbroad when applied to a person who knowingly transmits harmful material by means of a computer to a person the sender knows to be a minor, or when applied to a person who knowingly attempts to transmit such material to a person the sender believes to be a minor.

6. *Cyberspace Comms., Inc. v. Engler,* 55 F.Supp.2d 737 (E.D.Mich.1999), *aff'd* 238 F.3d 420 (6th Cir.2000) (striking down Michigan statute, M.C.L. 722.675(1), M.S.A. 25.254(5)(1) (prohibiting "knowingly" disseminating to a minor sexually explicit material harmful to minors without scienter requirement as to age of recipient)); *American Civil Liberties Union v. Johnson,* 194 F.3d 1149 (10th Cir.1999) (striking down N.M. Stat. Ann. § 30–37–3.2(C), criminalizing dissemination of material harmful to minors by computer; no scienter requirement); *American Libraries Ass'n v. Pataki,* 969 F.Supp. 160 (S.D.N.Y.1997) (holding unconstitutional New York Penal Law section 235.2, prohibiting use of computer to knowingly initiate or engage in communication harmful to minors; no scienter requirement as to age of minor).

We sustain the State's second point of error.

**Conclusion**

Having found that the search warrant affidavit sufficiently established probable cause and that Stone has failed to establish that section 43.24(b)(1) of the Penal Code is unconstitutional, we reverse the trial court's order granting the motion to suppress and remand the cause for further proceedings.