

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00050-CR

THE STATE OF TEXAS                                                    STATE

V.

MARLIN DERRELL YORK                                              APPELLEE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

----------

### NO. 02-12-00051-CR

THE STATE OF TEXAS                                                    STATE

V.

SHAVONIA TAMIKA YORK                                          APPELLEE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

----------

----------

# OPINION

----------

## I.  Introduction

In one issue, the State appeals the trial court's order granting the motions to suppress filed by Appellees Marlin Derrell York and Shavonia Tamika York. We reverse and remand.

## II.  Factual and Procedural Background

On August 22, 2010, Carrollton Police Officer Putman obtained a warrant, supported by a four-page affidavit, to search the Yorks' residence.  Police searched the house and found cocaine, marijuana, and $2,900 in cash.  The Yorks were charged with possession of a controlled substance, and each filed a motion to suppress.  The trial court held a hearing at which no witnesses were called and granted the motions.  The State now brings these concurrent appeals.

## III.  Suppression

The State asserts that the trial court erred by granting the motions to suppress because the affidavit supporting the search warrant provided a substantial basis for the magistrate's conclusion that there existed a fair probability that controlled substances would be found in the suspected residence. The Yorks respond that the search warrant affidavit contained nothing to provide a basis to conclude that controlled substances or contraband would be found in their residence and that it was insufficient to support a warrant.

## A. Standard of Review

While we normally review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, under which we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Instead, the trial court is constrained to the four corners of the affidavit. *Id.*

Accordingly, when reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 810; *see also McLain*, 337 S.W.3d at 271; *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location, and the facts stated in a search warrant affidavit "must be so closely

3

related to the time of the issuance of the warrant that a finding of probable cause is justified." *McClain*, 337 S.W.3d at 272.

## B. Affidavit

The affidavit submitted in connection with the warrant application contains the location and a description of the premises; states that "cocaine and/or other controlled substances," illegal drug paraphernalia, money, and other items are believed to be located there in violation of the health and safety code; and identifies Marlin D. York, a thirty-three-year-old black male, as the person who controls the premises and is suspected of knowingly or intentionally possessing cocaine or other controlled substances.

The affidavit lists as facts supporting probable cause: (1) the affiant's experience as a narcotics unit investigator; (2) on June 24, 2010, police found a cell phone while searching a different residence for illegal drugs and, while the search was in progress, the cell phone "received numerous phone calls" from a residential phone number identified as Marlin's; (3) another law enforcement investigator who was conducting another drug-related investigation told affiant that in 2009, Marlin had been connected with individuals believed to be involved in the distribution of illegal drugs; (4) the residence had the same address as Marlin had listed on his driver's license; (5) on July 21, 2010, a car registered to Marlin was seen in the residence's driveway; (6) on July 23, 2010, the search of trash bags in the trash can at the end of the residence's driveway yielded a plastic bag containing cocaine residue, a marijuana stem, and mail addressed to

4

Marlin; on August 20, 2010, another search of trash bags yielded more mail addressed to Marlin, two large plastic bags containing cocaine residue, and multiple coffee filters containing "a white powder that field tested positive for cocaine"; and (7) on August 17, 2010, Marlin had been seen in the residence's driveway. The affiant opined that based on his experience, the plastic bags' size and the coffee filters containing cocaine residue were indicia that Marlin was a large volume cocaine dealer. The affiant also included Marlin's criminal history, which showed that he had been arrested on various occasions in Texas or Louisiana for the manufacture and delivery of a controlled substance, possession with intent to distribute cocaine, driving while intoxicated, armed robbery, and contempt of court. The warrant issued on August 22, 2010.

## C. Findings of Fact and Conclusions of Law

Although the trial court did not respond to the State's request for findings of fact and conclusions of law, the trial judge orally articulated the following six reasons for granting the Yorks' motions to suppress: (1) the two trash runs were separated too far in time from each other (twenty-eight days), with insufficient recitation to positively link them to Marlin; (2) there was no indication that the mail addressed to Marlin was found in the same bag as the items containing the cocaine residue on both trash runs; (3) there was no indication that all other reasonable means of gathering evidence were exhausted prior to obtaining a search warrant; (4) the information obtained other than through the trash runs was too attenuated; (5) the magistrate should have required that the warrant be

5

executed in less than the three days required by statute; and (6) the fact that Marlin was observed at the residence was meaningless.[1]

## D. Analysis

A fair reading of the affidavit and the reasonable inferences that could be drawn from it initially sets out the affiant's experience in narcotics investigations and that he was investigating Marlin, whose residence since 2008 was also identified in the affidavit and who had been seen, along with a vehicle registered to him, at the residence. The affidavit's statement that a cell phone found two months earlier in a search for drugs at another location was called repeatedly from Marlin's residential phone number during the drug bust allowed an inference that the calls to that cell phone were not accidental and suggested a connection between Marlin and the drug activity at that location.

The affidavit further reflected that the two trash runs at the York residence, one occurring a month before the warrant issued and the second occurring immediately before its issuance, had yielded cocaine residue in coffee filters and plastic baggies, a marijuana stem, and mail addressed to Marlin, allowing the inference that not only had drug activity been occurring at the residence but also that it had been continuing for some time, as well as tending to rule out the possibility that someone from another location had placed the drugs in the trash.

---

[1]The trial judge stated, "And touching on the August 17th observations, so what? They established that a Marlin York lived at that address, or was at least visiting that address on that date. It doesn't tie him to any sort of drugs, any sort of illegal activity."

*See Flores*, 319 S.W.3d at 703 (stating that the magistrate could have reasonably drawn an inference that marijuana residue found in a garbage can at the residence in question originated with that residence because "under the 'doctrine of chances,' it was objectively unlikely that a person or persons unconnected to the . . . residence would have placed mari[j]uana in that residence's garbage can twice within a five-day period").[2]  Further, Marlin had previous arrests in Texas and Louisiana for various offenses, including narcotics possession, and another officer told the affiant that in 2009, Marlin had been connected to individuals involved in large scale drug distribution.

Giving the appropriate weight to the magistrate's determination and the trial court's ruling, we hold that all of the foregoing indicates that there was a fair probability that controlled substances would be found at the specified address and that the magistrate had a substantial basis for concluding that probable cause existed for the warrant's issuance.  *See id.*

We now address the court's articulated reasons for granting the motion to suppress.  First, we disagree with the trial court's assertion made in its first and fourth oral statements that the time separation between the trash runs

---

[2]In *Flores*, the court of criminal appeals concluded that the magistrate had a substantial basis for concluding that probable cause existed that there was at least a fair probability or substantial chance that marijuana would be found at the residence when the affiant had experience in narcotics investigations and had received an anonymous tip about narcotics activity in February 2007, and he found marijuana residue in a garbage can located directly in front of the residence in question on March 1, 2007, and March 5, 2007.  319 S.W.3d at 702–03.

emasculated the findings from the initial garbage examination. Taken together, the two runs show ongoing criminal activity and virtually eliminate the chance that someone else placed the drugs in the garbage bags. *See Ortiz v. State*, No. 02-03-00259-CR, at *3 (Tex. App.—Fort Worth Aug. 18, 2005, pet. ref'd) (mem. op., not designated for publication) (citing *State v. Stone*, 137 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd), for the proposition that when the affidavit recites facts indicating activity of a protracted and continuous nature, the passage of time becomes less significant); *see also Flores*, 319 S.W.3d at 703; *State v. Delagarza*, 158 S.W.3d 25, 29 (Tex. App.—Austin 2005, no pet.) ("The resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to warrants.").

Second, we disagree with the trial court's conclusion that because there was no indication that the mail addressed to Marlin was found in the same garbage bag as the items containing drug residue during the trash searches, there was no tie between Marlin and the drugs. Common sense yields a contrary result, particularly since the mail and drugs were found in the trash not once, but twice, and the garbage (including the drug evidence) was tied to Marlin's residence through the mail that had been discovered. *See, e.g.*, *State v. Raymer*, 786 S.W.2d 15, 17 (Tex. App.—Dallas 1990, no pet.) (op. on reh'g) (concluding that papers tied to the appellee found with drugs during a trash search provided a direct link between the drugs in the trash and appellee's house).

8

Third, we disagree with the trial court's statement that there is some legal requirement that "all other reasonable means [be] exhausted prior to defaulting to a search warrant and [that] the [S]tate needs to take all reasonable measures short of a search warrant to gather evidence prior to defaulting to such." This is not the law and disregards the law's preference for search warrants. *See Gates*, 462 U.S. at 236, 103 S. Ct at 2331.

Fourth, we disagree with the trial court's assumption that code of criminal procedure article 18.06's three-day requirement for execution of warrants was inapplicable. The trial court reasoned that "in this particular case, we have got something that is a commodity, that is quickly used, quickly sold, snorted, however you want to put it. It disappears quickly." This distinction is found nowhere in the statute, and the magistrate did not include any directions for a shorter period in the warrant.[3] *See* Tex. Code Crim. Proc. Ann. art. 18.06(a) (West 2005) (stating that the peace officer to whom the warrant is delivered shall execute it without delay and that it "must be executed within three days from the time of its issuance, and shall be executed within a shorter period if so directed in the warrant by the magistrate.").

Finally, we disagree with the "so what" comment that the trial judge made as to the determination that Marlin had been seen at the residence. Taken with

---

[3]To the contrary, the warrant states, "Herein fail not, but have you then and there this Warrant executed within three days, exclusive of the day of its issuance and exclusive of the day of its execution with your return thereon, showing how you have executed the same."

9

other evidence in the affiant's possession, it demonstrated that Marlin had been seen at a location that was his residence, wherein there was a fair probability that illegal drugs would be found. Therefore, we hold that the foregoing reasoning of the trial court did not overcome the deference afforded to the magistrate's determination of probable cause, and we sustain the State's sole issue.

## IV.  Conclusion

Having sustained the State's sole issue, we reverse the trial court's orders granting the Yorks' motions to suppress and remand these cases to the trial court for further proceedings.

PER CURIAM

PANEL:  MCCOY, DAUPHINOT, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  May 9, 2013

10